# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

JESUS HINOJOS,

               Plaintiff,

-vs-                                    Case No.  2:11-cv-102-FtM-36SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiff Jesus Hinojos' Complaint (Doc. #1), filed on March 3, 2011, seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's claim for disability insurance.  The Plaintiff filed his Memorandum of Law in support of the Complaint (Doc. #22) on August 8, 2011.   The Commissioner filed the Memorandum of Law in support of the Commissioner's decision (Doc. #23) on October 3, 2011.  Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on November 10, 2008, alleging an initial onset disability date of November 1, 2006 (Tr. 12, 48, 70, 101). The claim was denied initially on February 27, 2009, (Tr. 48), and upon reconsideration on July 14, 2009 (Tr. 49). The Plaintiff subsequently filed a Request for Hearing before an ALJ. (Tr. 62-63). ALJ Thurman Anderson held a hearing in Fort Lauderdale, Florida, and the Plaintiff appeared by video from Fort Myers, Florida. (Tr. 25). ALJ Anderson issued an unfavorable decision on March 5, 2010 (Tr. 9-20). The Appeals Council denied the Plaintiff's Request for Review on January 13, 2011 (Tr. 1, 5). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint for review with this Court under 42 U.S.C. § 405(g) on March 3, 2011.

### *Plaintiff's History*

The Plaintiff was born on September 10, 1966, and was forty-three (43) years of age at the time of the Commissioner's decision on March 5, 2010. (Tr. 28). The Plaintiff has an eighth grade education and does not have a GED (Tr. 28).[1] The Plaintiff's past work experience includes work as an auto mechanic (19, 133-35). The Plaintiff alleges an inability to work due to gout, diverticulitis, and foot and leg problems. (Tr. 133).

---

[1] Apparently, the ALJ was uncertain what Plaintiff's highest level of education was because of inconsistencies between hearing testimony and his disability application. (Tr. 17-18, 137).

## *Hearing Testimony*

A hearing was held before an ALJ on February 9, 2010, at which the Plaintiff testified. (Tr. 27-46). He testified that the last place he worked was at an auto-repair shop, helping with motor installation and general auto repair. (Tr. 30). He worked there for approximately five months. (Tr. 29). Though he only missed one day of work during the duration that he worked there, Plaintiff needed to take two breaks each hour in order to be able to meet the physical demands of the job. (Tr. 30). He testified that he stopped working at the repair shop because the work was too straining. (Tr. 31).

Plaintiff stated that previously his hip had gone out, which resulted in him using crutches for a period of time. (Tr. 34). He testified that at the time of the hearing he had been using a cane on a regular basis for less than two weeks. (Tr. 43-44).

He further testified that he has a nerve disorder in his left leg, which makes his left leg, left foot, and back hurt. (Tr. 38-39). Because of this condition, he has pain twenty-four hours a day which is not alleviated by medications. (Tr. 38). As a result of an accident in 1985 or 1986, Plaintiff also suffers from pain in his right leg, knee, and foot. (Tr. 40). As a result of right lower leg deformity, Plaintiff testified that he suffers from balance problems, pain, and numbness. (Tr. 45). Additionally, the pain from his accident also makes the Plaintiff's head ache (Tr. 40), but apparently this is relieved by medication. (Tr. 45).

Plaintiff testified that he has abdominal problems due to diverticulitis. (Tr. 42). He experiences symptoms in the left side of his stomach, which cause him to suffer hundred degree fevers and make Plaintiff feel shaky. (Tr. 43).

Neither a medical nor vocational expert testified at the hearing. (Tr. 27-47).

Plaintiff was admitted to Desoto Memorial Hospital on May 3, 2007, for middle and lower back pain. (Tr. 228). Since then, Plaintiff has had progressively increasing pain radiating into the right gluteal area and thigh. Id. An MRI revealed degenerative disc changes at the L3-L4 and L4-L5 levels. (Tr. 214).

On December 13, 2008, Plaintiff saw his primary physician, Kieran Smart, M.D., for severe pain in the legs and thighs (which he described as if walking on needles). (Tr. 258). Later that month, Dr. Smart indicated that Plaintiff suffers from hypertriglyceridemia, low density lipoprotein, and is overweight due to metabolic syndrome. (Tr. 254, 345). Dr. Smart also indicated that Plaintiff suffers from leg pain due to neuropathy. (Tr. 254, 345).

Plaintiff saw Dr. Smart twice in February 2009. On February 12, Plaintiff complained of "headache pounding on chest" and pain in his knees and bottom of feet. (Tr. 345). At that time, he was suffering from severe hypertension (Tr. 346), and Dr. Smart advised Plaintiff to schedule a physical evaluation. (Tr. 345). This evaluation took place on February 25. (Tr. 346). Dr. Smart noted that Plaintiff suffered from peripheral neuropathy (Tr. 346, 347), had poor ambulation secondary to pain in legs (Tr. 347), and had difficulty squatting due to pain (Tr. 346).

Dr. Smart completed a Residual Functional Capacity ("RFC") assessment of Plaintiff on May 6, 2009. (Tr. 350). The RFC indicated that Plaintiff has permanent injury in the right leg, peripheral neuropathy in the left leg, and suffers from leg pain. (Tr. 254, 345). Because of his impairments Plaintiff could only stand or walk for approximately two hours in an eight-hour workday and must alternate between sitting and standing at will in order to relieve pain and discomfort. (Tr. 350). Plaintiff was not able to climb, stoop, kneel, crouch, or crawl; his reaching,

handling, and fingering were limited to one-third of a workday; and his feeling limited to two-thirds of a workday.  (Tr. 350).  The RFC also recommended that Plaintiff be able to take breaks every thirty minutes due to pain when medications wear off.  (Tr. 350).  Dr. Smart also noted moderate limitations in Plaintiff's near acuity and mild limitations in his far acuity.  (Tr. 347, 350).  The doctor noted that due to pain and medication, the Plaintiff suffers from poor concentration and memory, and indicated that Plaintiff's concentration is limited to two-thirds of a workday, and his ability to understand simple instructions limited to one-third.  (Tr. 351).

On February 4, 2010, Ivan Cvik, M.D., performed both a record and  physical examination.  (Tr.432-33).  Dr. Cvik noted a serious deformity of the left leg, which had been surgically treated as a result of Plaintiff's motor vehicle accident in the 1980s.  The doctor stated that as a consequence of the accident and subsequent surgery, Plaintiff suffers from chronic pain.  (Tr. 432).  He noted that the range of motion in Plaintiff's left knee is approximately fifty percent of normal flexion and approximately seventy-five percent of normal extension.  (Tr. 432).  He also noted that Plaintiff's medical record documented three reports to an emergency room with complaints of left leg and calf pain.  (Tr. 432).  At that time, Plaintiff used oral pain medication and a cane and walked with a limp.  (Tr. 432).

Dr. Cvik also noted that Plaintiff suffers from peripheral neuropathy, which resulted in decreased touch sensation on the lateral and posterior area of the left calf, decreased motor strength in the left side, and chronic pain.  (Tr. 432).  He noted that the pain in the Plaintiff's right knee was not as severe as in the left knee.  (Tr. 432).  Dr. Cvik reviewed a 2009 x-ray which revealed mild joint space narrowing in the right knee.  (Tr. 317, 432).  Additionally, Dr. Cvik's review of the records indicated that Plaintiff suffers from chronic lower back pain and poor body mechanics.  (Tr.

432).  He noted Plaintiff's history of hypertension, gout, gastroesophageal reflux disease, and diverticulitis, and that they were under control at that time.  (Tr. 433).

Based on his review of the Plaintiff's medical records and his own physical examination, Dr. Cvik concluded that the Plaintiff's limitations are primarily due to severe injuries to his lower left leg. (Tr. 433).  Plaintiff's limitations included decreased mobility, strength, gait, and ability to walk. (Tr. 433).  He noted that the combination of Plaintiff's left leg problems and lower back pain results in significant decreases in Plaintiff's physical abilities, and that medications only suboptimally controlled Plaintiff's pain.  (Tr. 433).

Dr. Cvik indicated that Plaintiff can lift less than ten pounds frequently and 10-20 pounds occasionally.  (Tr. 436).  Plaintiff can stand or walk for a total of less than two hours in an eight hour workday, sit for a total of less than two hours in an eight hour workday, and must be able to alternate between sitting and standing at will to relieve pain and discomfort.  (Tr. 436).  Dr. Cvik also noted that Plaintiff cannot perform any postural activities at all, and can only perform reaching one-third of a workday.  (Tr. 436).  Plaintiff also needs to be able to take a ten minute break every hour.  (Tr. 436).  Plaintiff should walk with a cane or assistive device.  (Tr. 437).  Dr. Cvik stated that Plaintiff's concentration is limited to two-thirds of a workday.  (Tr. 437).

### *Administrative Law Judge's Opinion*

The ALJ issued his Decision, denying benefits, on March 5, 2010.   He found that the Plaintiff engaged in substantial gainful activity after his alleged disability date.  (Tr. 14).  The ALJ's specific findings were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has engaged in substantial gainful activity since November 1, 2006, the alleged onset date. (20 C.F.R. 404.1571 *et seq.*).

3. The claimant has the following severe impairments: gout, left foot and leg pain, right knee pain, history of diverticulitis, chronic lumbar pain. (20 C.F.R. 404.1520©)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours total in an eight-hour workday; and sit six hours total in an eight-hour workday. The claimant can frequently balance, stoop, kneel, crouch, crawl, and frequently climb stairs, ramps, ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to extreme cold and humidity.

6. The claimant is unable to perform any past relevant work. (20 C.F.R. 404.1565).

7. The claimant was born on September 10, 1966, and was forty years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. 404.1563).

8. The claimant has a limited education and is able to communicate in English. (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R.404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2006, through the date of this decision. (20 C.F.R. 404.1520(g)).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505).  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511).  To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed several errors for which this case should be remanded.  Specifically, Plaintiff alleges that the ALJ improperly considered the opinion of

Plaintiff's treating physician, Dr. Smart; failed to recognize that Plaintiff suffers from peripheral neuropathy and improperly believed that Plaintiff's left leg pain was due to gout; failed to consider the evidence of Plaintiff's headaches; erred by relying solely on medical-vocational guidelines and should have used additional vocational evidence, such as vocational expert testimony; and incorrectly determined that Plaintiff engaged in substantial gainful activity in 2009. The Plaintiff also alleges that the Appeals Council improperly denied his request for review.

*1. Whether Substantial Evidence Supports the ALJ's Decision Not to Accept Dr. Smart's Opinion*

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling

weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

The Plaintiff alleges that the ALJ did not have good cause to discount Dr. Smart's opinion, as he is Plaintiff's treating physician. Dr. Smart opined that Plaintiff has permanent injury in the right leg, peripheral neuropathy in the left leg, and suffers from leg pain. (Tr. 350). Because of these impairments, Dr. Smart determined that Plaintiff can only stand or walk for approximately two hours in an eight-hour workday, must alternate between sitting and standing at will in order to relieve pain

and discomfort, and needs to take breaks every thirty minutes due to pain when medications wear off. (Tr. 350). Dr. Smart also found that Plaintiff cannot climb, stoop, kneel, crouch, or crawl, and that his reaching, handling, and fingering are limited to one-third of a workday, and his feeling is limited to two-thirds of a workday. (Tr. 350). After eye testing, he noted moderate limitations in Plaintiff's near acuity and mild limitations in his far acuity. (Tr. 347, 350). Because Dr. Smart found that the Plaintiff suffers from poor concentration and memory, he limited Plaintiff's concentration to two-thirds of a workday and his ability to understand simple instructions to one-third of a workday. (Tr. 351). Plaintiff contends that the ALJ included none of these limitations in the RFC assessment: "The ALJ stated, without application, and ergo without good cause, that Dr. Smart's 'notes do not support this residual functional capacity.'" (Pl. Br. at 11 (citing Tr. 18)).

Plaintiff contends that Dr. Smart's handwritten notes about Plaintiff's peripheral neuropathy support the opposite conclusion from the one reached by the ALJ. (See Tr. 341, 345-46). Furthermore, the Plaintiff contends, the ALJ erred when he stated that Plaintiff's non-exertional limitations are caused by "depression and effects of his medication." (Tr. 18). According to Plaintiff, "[a] careful reading of Dr. Smart's opinion actually indicates the [Plaintiff's] limitations are due to *pain* and the effects of medications." (Pl. Br. at 12; see Tr. 351). Plaintiff argues that this is an important distinction since there is little medical evidence of Plaintiff's depression on the record, whereas the record is replete with evidence that Plaintiff suffers from severe pain. (See Tr. 38-40, 44-45, 48-49, 130, 133, 140, 151-52, 222, 228, 269-72, 285-89, 303, 305, 313, 341, 345-46, 386, 395, 403, 432-33). Plaintiff argues that Dr. Smart's opinion is supported by the notes and opinions of the examining physicians (Drs. Bordy and Cvik), and the ALJ erred when he relied on the notes and opinions of Dr. Krishnamurthy, a non-examining State Agency physician instead.

The Commissioner, in turn, contends that the ALJ's decision was proper and is supported by substantial evidence. The Court is inclined to agree. The ALJ considered Dr. Smart's opinion and declined to accept it after considering it in light of the whole of the medical evidence. The ALJ noted that Dr. Smart diagnosed Plaintiff with depression, but that the diagnosis was not demonstrable by medically acceptable clinical and laboratory diagnostic techniques in the record. (Tr. 14). The ALJ stated, "There is no medical evidence of record documenting that the [Plaintiff] ever received any psychiatric treatment or prescriptions for any psychotropic medication. Moreover, the [Plaintiff] never alleged that he had any symptoms of depression during his examination with Dr. Pascal Bordy, the State agency consultative examiner." (Tr. 14-15).

In addition to that, and more importantly, the ALJ found that Dr. Smart's notes do not support the residual functional capacity he assigned to Plaintiff, and that such an RFC is contradicted by medical evidence in the record. For example, the ALJ balanced Dr. Smart's statement that Plaintiff's right leg was "permanently injured" against multiple x-rays taken in 2009. The ALJ also considered that Dr. Mohan Narayanan had noted in September 2009 that the Plaintiff was able to ambulate normally. (Tr. 18).

The Plaintiff's own statements in the record contradict Dr. Smart's limitations on Plaintiff. Plaintiff admitted to driving and physical activity (see Tr. 228, 257, 332) which belie such limitations. The ALJ observed that

> [t]he [Plaintiff's] activities of daily living are not consistent with his complaints of disabling symptoms and limitations. The [Plaintiff] reported that he is able to take care of his own personal care and provide care for his child. He is able to drive an automobile and is able to go food shopping. Although the [Plaintiff] reported that he no longer is able to go fishing, the record reveals that he strained his back moving a boat six months after his alleged onset of disability. In May 2007, the [Plaintiff] went to the emergency room after

straining his back while lifting a boat by the trailer tongue.

(Tr. 17) (internal citations to the Record omitted). As further proof of inconsistency with Dr. Smart's limitations, the ALJ also noted that

> [t]he [Plaintiff] also worked after his alleged disability onset date. The [Plaintiff] testified at the hearing that he worked five months in 2009 as an automobile mechanic assisting with motor installations and general automobile repair. Although the [Plaintiff] alleged that he had ample breaks and testified that he had to quit after five months because it was too stressful on his legs, it does indicate that the [Plaintiff's] daily activities have, at least at times, been somewhat greater than the [Plaintiff] has generally alleged.

(Tr. 17).

Additionally, as the ALJ noted, Dr. Smart does not supply reasoning for most of his opinions. He included in Plaintiff's RFC limitations on Plaintiff's reaching, handling, and fingering, yet he did not identify any impairments that would limit Plaintiff's use of his hands. Especially since the medical record documented much contradictory evidence (including the opinions of other physicians), the ALJ properly declined to assign controlling weight to Dr. Smart's opinions, especially since many of them were unsupported by the record.

### 2. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Impairments, Including His Leg and Head Pain

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520©)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or

combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

Plaintiff alleges that the ALJ erred because he failed to properly attribute Plaintiff's leg pain to peripheral neuropathy or to consider evidence of Plaintiff's headaches. However, the medical evidence shows that Plaintiff's leg and head pain were manifestations of his leg impairments. Additionally, Plaintiff testified at the hearing that the pain causes his head to hurt (Tr. 40) and linked his leg and head pain (Tr. 44), further showing that his head pain was a manifestation of his leg impairments. See McGuire v. Astrue, No. 8:07-cv-1626-T-TBM, 2009 WL 88590, at *5 (M.D. Fla. Jan. 13, 2009) ("While Plaintiff urges unspecified but additional limitations related to her headaches that were not referenced by the ALJ, I find no error in this given the ALJ's conclusion that the

medical record and testimony did not support addition limitations related to her TMJ injury and complaints of pain.").

The ALJ did not ascribe a name to the cause of Plaintiff's leg pain, but he did consider the leg impairments and the symptoms that resulted from them. (Tr. 15-18). The ALJ noted that Plaintiff was treated in April 2009 at the Charlotte Regional Medical Center for complaints of left foot pain and ankle pain, and that Dr. Arthur Lyman, M.D., linked the Plaintiff's foot pain to Gout, which was able to be effectively controlled by medications. (Tr. 16). The ALJ took into consideration that

> [t]he medical records indicate that the [Plaintiff] was in a severe motor vehicle accident in 1986 and that he sustained severe compound fractures of the lower right extremity. X-rays of the [Plaintiff's] right knee, dated March 22, 2009, were negative and only showed mild joint space narrowing and findings consistent with previous anterior cruciate repair. . . . The [Plaintiff's] treatment for his leg and back pain, which has been limited to pain medications, has been essentially routine and conservative in nature.

(Tr. 16) (internal citations to the Record omitted). The ALJ extensively considered Dr. Bordy's examination of the Plaintiff's right lower leg and knee. He noted that "[a]n examination of the [Plaintiff's] right knee revealed that abduction stress was negative and that Lachman, Pivot, Anterior Drawer, McMurry were all normal. . . . The [Plaintiff] was able to squat, walk without assistive devices, walk on his toes and heals (*sic*), and perform a tandem gait." (Tr. 17).

In his discussion about the Plaintiff's alleged need for a cane for walking assistance, the ALJ stated,

> There is, however, nothing in the [Plaintiff's] prior medical records documenting the need for a cane to ambulate. In November 2008, the [Plaintiff] reported that he had multiple operations from a car accident years ago, but denied any medical or surgical problems relating to the accident. Medical notes from April 2009 indicate that

> the [Plaintiff] could ambulate independently. In addition, Dr. Mohan
> Narayanan, M.D., noted in September 2009 that the [Plaintiff] was
> able to ambulate normally.

(Tr. 17) (internal citations to the Record omitted). The ALJ considered this alongside other objective medical evidence in his consideration of Plaintiff's leg as a severe impairment. This medical evidence, in addition to statements from the medical sources, Plaintiff's daily activities, Plaintiff's work activity after the alleged onset of disability date, and his inconsistent statements (which "suggest that the information provided by the [Plaintiff] generally may not be reliable" (Tr. 18)), demonstrate that the ALJ adequately addressed Plaintiff's leg and head pain, and his decision is supported by substantial evidence.

### 3. Whether the ALJ Properly Applied the Medical-Vocational Guidelines

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Augusto v. Commissioner of Social Security, 2008 WL 186541 *7 (M.D. Fla. January 18, 2008) (citing Foote, 67 F.3d at 1558). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the "grids." Augusto, 2008 WL 186541 at *7. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Augusto, 2008 WL 186541 at *7 (citing Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to

meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Augusto, 2008 WL 186541 at *7 (citing Walter v. Bowen, 826 F.2d 996, 1002-3 (11th Cir.1987)). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. Id. (citing Foote, 67 F.3d at 1559). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. Id. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Id. (citing Foote, 67 F.3d at 1559).

To preclude use of the grids, a limitation must significantly or severely restrict the ability to work. A minor or merely possible restriction is insufficient. Id. (citing Kimbrough v. Sec'y of Health & Human Servs., 801 F.2d 794, 796 (6th Cir.1986)).

Plaintiff challenges the ALJ's use of the grid framework in arriving at his decision that Plaintiff was not disabled under the framework of Grid Rule 202.18. (Tr. 19). This Rule directs that a Plaintiff can perform a significant number of jobs in the national economy if he or she (1) is a younger individual; (2) has a limited education or less; (3) has skills that are not transferable to other work; and (4) has an RFC that matches the requirements of light work. 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.18.

Plaintiff alleges that the ALJ failed to realize that Dr. Smart's limitations were due to the non-exertional impairments of pain medication. (Tr. 351). Instead, the ALJ improperly asserted that

the limitations were due to depression and side effects of medication. (Tr. 18). Thus, the Plaintiff contends, the ALJ improperly failed to consider pain as one of the two reasons Dr. Smart opined that Plaintiff has a poor ability to concentrate and to understand simple instructions. (Tr. 351). Plaintiff alleges that had the ALJ properly considered Dr. Smart's opinion, he could have credited the Plaintiff's pain as the underlying cause for his concentration problems, which would have called for the use of a vocational expert. Additionally, the Plaintiff asserts that because the ALJ found that the Plaintiff cannot perform a full range of work at a light exertional level, the case requires the use of a vocational expert.

However, "[w]hen considering [a Plaintiff's] nonexertional limitations, the ALJ need only determine whether [a Plaintiff's] impairments significantly limit her basic work skills." Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004). As noted above, the ALJ did consider Plaintiff's leg and head pain and Plaintiff's nonexertional limitations (Tr. 15, Finding 5), and applied the grids after determining that the limitations "have little or no effect on the occupational base of unskilled light work." (Tr. 19). Thus, since the ALJ found that Plaintiff's nonexertional impairments did not significantly or severely interfere with his work ability, his use of the grids was proper and supported by substantial evidence.

### *4. Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Engaged in Substantial Gainful Activity After His Alleged Onset of Disability*

Substantial gainful activity is work that involves significant mental and physical activities and is usually performed for pay or profit. 20 C.F.R. § 404.1572. "Substantial" work activity is "work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or . . . less, [one] get[s] paid less, or ha[s] less responsibility than . . . before." Id. Work activity is "gainful" if it "is the kind of work usually done

for pay or profit, whether or not a profit is realized." Id.  Among the factors to be considered in determining whether work is substantial gainful activity are time spent in the work; quality of the performance; whether the worker is self-employed; the need for special conditions or supervision; use of experience, skills, and responsibilities; and whether work contributes substantially to the operation of the business.  Johnson v. Sullivan, 929 F.2d 596, 597 (11th Cir. 1991) (citing 20 C.F.R. § 404.1573).

If work is done under special conditions it may not be classified as substantial gainful activity.  Federal Regulations list several exemplary factors: (1) You required and received special assistance from other employees in performing your work; (2) You were allowed to work irregular hours or take frequent rest periods; (3) You were provided with special equipment or were assigned work especially suited to your impairment; (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work; (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.  20 C.F.R. § 1573©).

Earnings above a certain dollar threshold level create a presumption of substantial gainful activity, but this is a rebuttable presumption.  Johnson at 598.  In 2009, the threshold amount was $980.00. See Cost-of-Living Increase and Other Determinations for 2009, 73 Fed. Reg. 64,651, 64,656 (Oct. 30, 2008).  Here, the ALJ found that the Plaintiff engaged in substantial gainful activity when he worked at the auto repair shop for five months in 2009.  Plaintiff alleges that this finding was improper because the ALJ did not take into consideration the special conditions that Plaintiff

encountered while working.  The Commissioner alleges that the ALJ did properly consider those conditions.

Though being an auto mechanic usually requires standing for eight to ten hours per day, Plaintiff's boss would accommodate him with approximately two breaks per hour so that Plaintiff could sit down. (Tr. 30).  During the time that Plaintiff was employed he missed work once per week.  (Tr. 31).  Nevertheless, the ALJ properly concluded that Plaintiff engaged in substantial gainful activity while he was employed.

Plaintiff earned approximately $1,009.17 per month (Tr. 448), which is above the dollar threshold for 2009.  The ALJ explicitly noted that Plaintiff "alleged that he had ample breaks and testified that he had to quit after five months."  (Tr. 17).  Nevertheless, the ALJ considered this evidence against other medical evidence in the Record.  For example, the ALJ gave great weight to the findings of Dr. Minal Krishnamurthy, M.D., who

> provided a physical residual functional capacity assessment in which he opined that the [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours total in an 8-hour workday; and sit 6 hours total in an 8-hour workday. . . . His assessment concluded that the [Plaintiff] had no postural limitations.

(Tr. 18) (internal citations to the Record omitted).  None of the factors listed in the Regulations are dispositive, and the ALJ is properly allowed to consider them against the whole of the record.  See Martinez v. Comm'r of Soc. Sec., 132 F. App'x 310, 313 (11th Cir. 2005) ("[E]ven though Martinez stated that the [place of employment] made special accommodations for him, . . . the Commissioner could nonetheless conclude that Martinez's work, including the special conditions, was at the level of substantial gainful activity.").

Thus, substantial evidence supports the ALJ's determination that Plaintiff engaged in

substantial gainful activity after the date of alleged disability onset.

### 5. *Whether the Appeals Council Properly Denied Plaintiff's Request for Review*

Plaintiff alleges that the Appeals Council erred in affirming the ALJ's decision in light of a report submitted by the Plaintiff from his supervisor who stated that Plaintiff was provided special accommodations from his employer and that thirty percent of Plaintiff's job duties had to be assumed by coworkers. (Tr. 447). The Supervisor claimed that Plaintiff had to miss work two to three times per month because of sickness or doctor's appointments. (Tr. 447). Additionally, he noted that Plaintiff was unable to perform a number of other duties of his job. (Tr. 446-47). This form was submitted to the Appeals Council as new evidence. Plaintiff alleges that the Appeals Council concluded without explanation that the ALJ properly found that Plaintiff's work at Apac's Auto Repair was substantial gainful activity.

"If a claimant submits new noncumulative and material evidence to the [Appeals Council] after the ALJ's decision, the AC shall consider such evidence. . . ." Smith v. Soc. Sec. Admin., 272 F. App'x 789, 800 (11th Cir. 2008). A reviewing court will remand the case where the Appeals Council "failed to adequately evaluate new evidence submitted to it and instead perfunctorily adhered to the decision of the ALJ." Smith v. Bown, 792 F.2d 1547, 1551 (11th Cir. 1986) (citing Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980)). Nevertheless, "[t]he Appeals Council may deny review if, even in light of the new evidence, it finds no error in the opinion of the ALJ." Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010).

The Appeals Council considered the additional evidence which the Plaintiff submitted and then concluded that it "does not provide a basis for changing the [ALJ's] decision." (Tr. 1). The Appeals Council determined that record contained sufficient evidence to support the ALJ's decision

"[e]ven if one completely removed all references to or consideration of [Plaintiff's] work at Apac Auto from the record." (Tr. 2). Thus, the Appeals Council properly considered all the new evidence before them and denied Plaintiff's request for review.

Accordingly, it is now

**RECOMMENDED:**

The decision of the Commissioner should be **Affirmed.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this  3rd  day of January, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record